UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Christopher Ridout | Elizabeth McNulty |
| Dayna Carter | Cyrus Wilkes |

**Proceedings:** PLAINTIFF'S MOTION TO CERTIFY CLASS (dkt. 56, filed October 11, 2013)

DEFENDANT'S MOTION TO EXCLUDE EXPERT DECLARATION AND TESTIMONY OF ROGER WILSON (dkt. 76, filed December 18, 2013)

## I.    INTRODUCTION

On September 13, 2012, plaintiff Miatta Rice filed suit in the Los Angeles County Superior Court against defendant Sunbeam Products, Inc., d/b/a Jarden Consumer Solutions ("Sunbeam"). Defendant removed the action to this Court on September 13, 2012. Plaintiff brings suit on behalf of herself and all others similarly situated in California who purchased a Crock-Pot (or "the product") from defendant during the last four years. She alleges that the Crock-Pot poses an unreasonable risk of burns, fires, and other related injuries to consumers when used as intended by the manufacturer.

Plaintiff's operative Fourth Amended Complaint ("FAC") asserts claims for: (1) violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"); (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); (3) violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) negligence; and (7) strict liability. Dkt. 37. On October 11, 2013, plaintiff moved to certify a class in connection with her claims under the CLRA, UCL, and FAL. Plaintiff's proposed class definition is:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

> All persons who purchased a Sunbeam Crock-Pot (Model Number: SCV700-SS) during the last four (4) years from Defendant Sunbeam's website or an authorized retail store located in the State of California . . . .

Mot. 13.

Defendant opposed the motion on December 18, 2013, and plaintiff replied on February 2, 2014. Concurrently, on December 18, 2013, defendant filed a motion to exclude the declaration and testimony of Roger Wilson, an expert who plaintiff proffered in support of her motion for class certification. Plaintiff opposed the motion to exclude on January 31, 2014, and on February 10, 2014, defendant replied. On February 24, 2014, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff's allegations concern her purchase of a Sunbeam Crock-Pot, Model No. SCV700-SS, a slow-cooking kitchen device sold online by the manufacturer direct to consumers and through various retailers of household goods. FAC ¶ 23. Defendant markets the product to consumers with families. Id. ¶ 24. The product is intended to heat food using the heating components concealed within the stainless steel base of the product; the food is contained within a removable stoneware dish that sits atop the stainless steel base. Id. ¶¶ 25–26. The accompanying Owner's Guide recommends cooking times between one hour and nine hours using one of the product's three temperature settings. Id. ¶ 45.

The heating component that is concealed within the stainless steel base is a metal band wrapped horizontally around the aluminum interior housing. Id. ¶ 26. This band is approximately 0.75 inches in width and sits approximately four inches below the top of the interior housing. Id., Ex. D. There is no insulation between the heating component and the exterior stainless steel base. Id. ¶¶ 5, 27. While the product is in use, the exterior upper rim of the steel base reaches temperatures exceeding 294 degrees Fahrenheit, and the exterior stainless steel sidewall can reach temperatures exceeding 270 degrees Fahrenheit. Id. ¶¶ 28–30. Plaintiff alleges that when metallic surfaces reach temperatures in excess of 158 degrees, damage or burns to skin will occur almost

Case 2:12-cv-07923-CAS-AJW   Document 104   Filed 02/24/14   Page 3 of 9   Page ID #:1836

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

instantaneously upon contact, and therefore defendant's Crock-Pot is unreasonably dangerous even when used as intended. Id. ¶¶ 5, 31.

On September 12, 2011, plaintiff began cooking a meal according to directions contained in the accompanying Owner's Guide. Id. ¶¶ 32–33. About three hours later, with the product still cooking her meal, she reached across her counter to grab an item next to the Crock-Pot. As she was doing so, she allegedly suffered a significant burn on her wrist due to the high temperature of the stainless steel exterior of the Crock-Pot. Id. ¶¶ 34–35. Plaintiff called defendant to complain; in response, defendant allegedly asked plaintiff to send the product to its offices for inspection, indicating that it may offer to replace the allegedly defective Crock-Pot. Id. ¶¶ 36–37.

Plaintiff alleges that defendant has made and continues to make various misrepresentations regarding the safety and quality of the Crock-Pot. As relevant here, the Court previously found that plaintiff had stated claims under the CLRA, UCL, and FAL based on a statement on the product's packaging that the Crock-Pot "cooks all day—while the cook's away." Dkt. 45 at 8-11. This statement appears underneath an image of a mother and child smiling outdoors. FAC ¶ 39. Plaintiff alleges that this representation—and the expectations of safety that arise from it—is false and misleading because the product "cannot safely be operated as instructed for long periods of time without supervision given that even the slightest, cursory contact with the base can cause serious burns." Id. ¶ 48. Moreover, the cooking vessel in the product also reaches unexpectedly high temperatures, which causes food to burn, boil, or char within short periods of time, further undermining consumers' reasonable expectations. Id. ¶ 49.

Defendant also allegedly failed to disclose material facts on the Crock-Pot's labels, advertising, or packaging material. First, nowhere on the stainless steel base of the product does defendant warn about "the heat that may be emitted, nor that the surface may cause serious burns or other injuries when in used [sic] as instructed." Id. ¶ 50. Nor does defendant disclose anywhere on its advertising and packaging that the exterior surface temperature of the Crock-Pot's base can reach temperatures in excess of 270 degrees without warning or other indication. Id. ¶ 51. These omissions are material and misleading, plaintiff alleges, as consumers are "lured into buying the Crock-Pot when they are intending to purchase a safe, quality slow cooker for use over extended periods of time in their home." Id. ¶ 53. A reasonable consumer would wish to know whether an appliance they were about to purchase "has a high propensity to burn or injure them," but

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

consumers have no way of knowing about this defect or potential for injury at the time of purchase. Id. ¶ 52, 131. This defect "severely restricts the possible uses and benefits of the Crock-Pot," since the product can "injure consumers without warning" if a consumer "merely mak[es] incidental or minor contact with the large base of the Crock-Pot." Id. ¶ 55. Plaintiff and putative class members would not have purchased the Crock-Pot, or would have only purchased the product at a lower price, if defendant had disclosed this material information. Id. ¶ 59.

Plaintiff further alleges that defendant has had constructive and actual knowledge of the defect since at least 2011, based upon "numerous consumer complaints made directly to Sunbeam or through online communications and complaints of consumers at large." Id. ¶ 64. Defendant "acknowledged internally" that the defect had caused injuries to consumers, without disclosing this fact to consumers at large. Id. ¶ 65. Despite receiving notice of the defect and its effects, defendant continues to manufacture and market the product, fails to disclose the propensity for the product to cause burns or injuries, represents that the product is safe for consumers, and has not implemented a recall or repair program acknowledging the existence of the defect and providing consumers with an adequate remedy to fix the deficiency. Id. ¶ 66.

### III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ---, ---, 131 S. Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000). These requirements effectively "limit the class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). Dukes, 131 S. Ct. at 2548. Rule 23(b)(3) governs cases where monetary relief is are the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190–1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (2d. 3d. 1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S. Ct. at 2551. This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

## IV.   DISCUSSION

The parties contest nearly every element of the Rule 23 standard for class certification.  The Court, however, concludes that it would not be appropriate to reach most of these arguments at this juncture, as the record is not yet sufficiently developed to determine whether plaintiff can satisfy Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members."  In particular, the Court finds, for the reasons discussed below, that plaintiff must supply expert evidence about the "true market value" of the allegedly defective Crock-Pot in order to show that relief can be calculated on a class-wide basis.  Because plaintiff has not yet tendered such evidence in connection with her motion for class certification, the Court finds that plaintiff's motion should be denied without prejudice.

Although plaintiff alleges that she burned herself when her wrist brushed the Crock-Pot, her class action allegations do not seek recovery for physical injuries to herself and other Crock-Pot owners.  Instead, plaintiff asserts that the defect in the Crock-Pot reduced the fair market value of the Crock-Pot below the $24.99 that plaintiff paid for it.  FAC ¶ 67; Rice Decl. ¶ 4. As plaintiff states in the FAC, if she "known of the Defect in the Crock-Pot and the substantial risk of burns resulting from use of the Crock-Pot, [she] would not have bought the Crock-Pot, would have only purchased it if sold at a lower price than the price she paid or would have considered other budget friendly brands."  Id. ¶ 68.  As such, plaintiff reasons, she and other purchasers of the Crock-Pot are entitled to recover the difference between what they paid for the product and what it is actually worth given the defect.  Reply 12; FAC ¶¶ 59, 68

As a general matter, plaintiffs are correct that California law authorizes this form of recovery.  Under the UCL, FAL, and CLRA, a court may grant a class restitution as a form of relief. Colgan, 135 Cal. App. 4th at 694 ("There is nothing to suggest that the restitution remedy provided under the CLRA should be treated differently than the restitution remedies provided under the False Advertising or Unfair Competition Laws."); Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780.  The form of restitutionary relief authorized by California law has two purposes: returning money unjustly taken from the class, and deterring the defendant from engaging in future violations of the law.  Colgan, 135 Cal. App. 4th at 695.  Restitutionary relief is an equitable remedy, and its purpose  is "to restore the status quo by returning to the plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

funds in which he or she has an ownership interest." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003); Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163, 177 (2000) ("The object of the restitution order in each case was money that once had been in the possession of the person to whom it was to be restored.").

In granting restitution, "[a] court of equity may exercise its full range of powers in order to accomplish complete justice between the parties." Colgan, 135 Cal. App. 4th 698. Nonetheless, the restitution awarded must be a "quantifiable sum," and the award must be supported by substantial evidence. Id. at 700; Cortez, 23 Cal. 4th at 178. Thus, the restitution awarded to class members must correspond to a measurable amount representing the money that the defendant has acquired from each class member by virtue of its unlawful conduct. Colgan,135 Cal. App. 4th at 697-98. The magnitude of this relief must be measured in light of the purpose of restitutionary relief, which is restoring the *status quo ante* by giving back to the class members what was taken from them through violations of the law. Id. Unlawful profits unfairly obtained can provide a measure for recovery, but only "to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." Korea Supply, 29 Cal. 4th at 1148.

As relevant here, one method of quantifying the amount of restitution to be awarded is computing the effect of unlawful conduct on the market price of a product purchased by the class. Colgan, 135 Cal. App. 4th at 698-99 ("Where a person is entitled to a money judgment against another because by fraud, duress or other consciously tortious conduct the other has acquired, retained or disposed of his property, the measure of recovery for the benefit received by the other is the value of the property at the time of its improper acquisition, retention or disposition . . . .") (quoting Restatement of Restitution § 151). This measure of restitution contemplates the production of evidence that attaches a dollar value to the "consumer impact or advantage" caused by the unlawful business practices. Id. at 700. Restitution can then be calculated by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful business practices.

However, even if plaintiff's proposed method of computing damages is permissible under California law, she has not yet produced any expert testimony purporting to calculate the true market price of the Crock-Pot. In the absence of any expert testimony

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

showing that it is possible to calculate this true market price on a classwide basis, certification is foreclosed by the Supreme Court's recent holding in Comcast v. Behrend, 133 S. Ct. 1426 (2013).

In Comcast, an antitrust action, the Supreme Court considered whether class certification was appropriate under Rule 23(b)(3) where the district court had accepted only one of the plaintiffs' four theories of antitrust injury, but the plaintiffs' method of computing damages did not differentiate between harm caused by the four forms of antitrust injury asserted by the plaintiffs. Id. at 1433. The lower courts believed that this computation of classwide damages was acceptable because there was no need for the plaintiffs "to tie each theory of antitrust impact to a calculation of damages." Id. The Supreme Court held that this reasoning was in error, because it ignored the principle that "[t]he first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." Id. at 1435 (emphasis in original). The Court explained that "at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." Id. at 1433. Finding the requisite connection lacking between the plaintiffs' evidence of classwide damages and the plaintiffs' theory of liability to the class, the Court found that Rule 23(b)(3) was not satisfied.

Under Comcast, courts can only certify a Rule 23(b)(3) class if there is evidence demonstrating the existence of a classwide method of awarding relief that is consistent with plaintiff's theory of liability. Forrand v. Fed. Exp. Corp., 2013 WL 1793951, at *3 (C.D. Cal. 2013) ("As the Supreme Court reemphasized in Comcast, in order for Rule 23(b)(3)'s predominance requirement to be satisfied, a plaintiff must bring forth a measurement method that can be applied classwide *and* that ties the plaintiff's legal theory to the impact of the defendant's allegedly illegal conduct."); Roach v. T.L. Cannon Corp., 2013 WL 1316452 (N.D. N.Y. 2013) ("The failure of the proponent of the class to offer a damages model that was susceptible of measurement across the entire class for purposes of Rule 23(b)(3) was fatal to the certification question."). Otherwise, the plaintiff has not met her burden of introducing evidence showing that common questions predominate regarding classwide relief. Comcast, 133 S. Ct. at 1432 ("The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).").

Accordingly, plaintiff must supply at least some expert evidence about the true market value of a defective Crock-Pot. It bears emphasizing that this does not mean that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:12-cv-07923-CAS(AJWx) | Date | February 24, 2014 |
|---|---|---|---|
| Title | MIATTA RICE V. SUNBEAM PRODUCTS, INC. | | |

class certification requires the plaintiff to show that her calculation of the true market value is correct. See In re Cathode Ray Tube (CRT) Antitrust Litig., 2013 WL 5429718, at *7 (N.D. Cal. June 20, 2013) (explaining that class certification only "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class"). But Comcast does require, at a minimum, some showing that a classwide calculation of the true market value is possible.

Here, plaintiff has made no such showing, as she has not proffered any expert evidence at all on the subject of calculating relief. This lack of expert evidence, in turn, compels the conclusion that certification for the California class would be premature: plaintiff has not yet demonstrated that she has satisfied Rule 23(b)(3)'s predominance requirement. The denial of class certification is without prejudice, however, because plaintiff may well be able to come forward on a renewed motion with the requisite expert testimony concerning the true market value of the Crock-Pot. If she does, the Court will be able to consider whether "questions of law or fact common to class members predominate over any questions affecting only individual members," as well as whether plaintiff has satisfied the other requirements of Rule 23.

## IV. CONCLUSION

In accordance with the foregoing, the Court DENIES plaintiff's motion for class certification without prejudice to being renewed in connection with expert evidence about the true market value of the Crock-Pot.

Because the Court denies plaintiff's motion for class certification, the Court need not reach the question of whether to exclude the testimony of Robert Wilson, an expert proffered by plaintiff to testify on the temperature of the Crock-Pot and its compliance with relevant industry standards. The Court accordingly DENIES as moot defendant's motion to exclude, without prejudice to being renewed in connection with a subsequent renewed motion for class certification. As discussed at the hearing held on February 24, 2014, the parties are directed to meet and confer and submit a proposed briefing schedule for this renewed motion.

IT IS SO ORDERED.

00:05

Initials of Preparer    CMJ